State, ex rel. Maupin, v. Amsberry.

---

STATE, EX REL. WILL M. MAUPIN, RELATOR, v. DARIUS M. AMSBERRY, SECRETARY OF STATE, ET AL., RESPONDENTS.

FILED MAY 15, 1920. No. 21484.

Elections: CERTIFICATE OF NOMINATION: OBJECTIONS. Unless objections to a certificate of nomination in apparent conformity with the statute providing for primary elections are made in writing and filed with the secretary of state within three days after the certificate is filed, such certificate of nomination must be deemed to be valid.

Original proceeding in mandamus to compel respondent, secretary of state, to issue a certificate of nomination of candidates for office, omitting the name of John H. Morehead as candidate for governor. *Writ denied.*

*Ritchie & Canaday* and *Ralph G. Coad,* for relator.

*Clarence A. Davis, Attorney General, I. L. Albert* and *Dexter T. Barrett, contra.*

Per Curiam.

On March 31, 1920, the relator filed an original application for a peremptory writ of mandamus in this court to compel the respondent, the secretary of state, to issue and transmit to each county clerk and election commissioner in the state a new certificate of nomination of candidates to be voted for at the primary election to be held April 20, 1920, and to omit therefrom the name of John H. Morehead as a candidate for governor. The point is made by the relator that the failure to present to the secretary of state a county treasurer's receipt showing the payment of the necessary filing fee on or prior to March 20, 1920, is fatal to the respondent's right to have his name placed upon the primary ballot as a candidate for governor. The record discloses that on March 20 a petition of nomination, signed by 34 qualified electors, was filed with the secretary of state requesting that the name of John H. Morehead, of Falls City, Richardson county, Nebraska, be placed upon the official primary ballot of the democratic party as a candidate for governor. At the time of the filing of this petition no receipt of the county treasurer of Richardson county was presented to the secretary of state showing the payment of the regular filing fee. Such receipt was filed on March 25, and showed on its face that payment to the county treasurer had been made on March 20. A determination of the question presented involves an interpretation of some of the provisions of the general primary law. Speaking in general terms, it was the purpose of the primary election law to provide an easy method by which a person on his own initiative, or by petition of a designated number of electors, might become a candidate for state office.

Section 2157, Rev. St. 1913, provides: "The name of no candidate shall be printed upon an official primary

ballot unless at least thirty days prior to such primary, either he, or twenty-five qualified electors of the party with which such candidate affiliates shall have filed a written application with the proper authority and in substantially the following form: * * * In case a nomination shall be made by electors, * * * said nominee shall, within five days after the date the said certificate shall be filed with the proper officer, file a statement in writing duly verified under oath, stating that he affiliates with the party named in said certificate, that he will abide by the results of said primary, and if elected will qualify and serve as such officer.''

Section 2156, Rev. St. 1913, provides: ''No nominating paper shall be filed until the proper county treasurer's receipt showing the payment of such filing fee shall be presented to the officer with whom such nominating paper is to be filed.''

The law further provides that nominating papers of candidates for state officers shall be filed with the secretary of state, and that there shall be paid to the county treasurer of the candidate's residence for the use of the general fund a fee of $10.

Section 2160, Rev. St. 1913, provides: ''At least twenty-five days before any primary * * * the secretary of state shall transmit to each county clerk a certified list containing the name * * * of each person for whom nominating papers have been filed in his office, and entitled to be voted for at such primary.''

Section 2162, Rev. St. 1913, provides: ''All certificates of nomination or nomination statements, which are in apparent conformity with the provisions of this article, shall be deemed to be valid, unless objections thereto shall be duly made in writing within three days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby. * * * The officer with whom the original certificate was filed * * * shall, in the first instance, pass upon the va-

lidity of such objection, and his decision shall be final, unless an order shall be made in the matter by the county court, or by a judge of the district court, or by a justice of the supreme court at chambers, on or before the second Wednesday preceding the election.''

The successful operation of the primary law requires that the successive steps prescribed shall be taken at the time and in the manner provided by the statute. Petitions requesting the names of candidates to be placed upon the primary ballot must be filed at least 30 days before the primary election, and in the instant case March 20 was the last day upon which names of candidates could be placed upon the primary ballot. Objections, if any, must be filed within three days thereafter. The purpose of this provision is to allow sufficient time so that notice of such objections may be given by mail to the candidates affected, and that a hearing may be had thereon before the proper filing officer, and sufficient time allowed for a summary review of the decision of such officer before the county court, or a judge of the district court, or by a justice of the supreme court at chambers, on or before the second Wednesday preceding the election. The evident intent is that a decision may be had thereon, if possible, before the fourteenth day prior to the election, at which time the county clerk is required to prepare for printing and posting the sample ballot. If no objections are filed within three days after the nominating papers are filed, they shall be deemed to be valid. This is a reasonable provision intended to facilitate the working of the law, for, as we have seen, unless objections are filed within a short period, there would not be sufficient time for a notice, hearing and review of the action of the filing officer before the time the county clerk is required to post and print the ballot. It may be objected that the complaint here is not that the papers are not ''in apparent conformity with the provisions of this article,'' but the want of authority of the secretary of state to file them. Construing the

language of the statute literally and technically, this may be true, but we believe the law should be—to use the language of section 2134, Rev. St. 1913, relating to the giving of notice and the conduct of the primary—"liberally construed so that the real will of the electors may not be defeated."

Before the five days expired, in which the person named in the certificate must accept or reject the filing, the secretary of state received a telegram of acceptance from John H. Morehead, and a telegram from the county treasurer of Richardson county stating that the filing fee had been paid on March 20. The receipt itself and a formal acceptance was presented to the secretary of state on March 25; the receipt being dated March 20, 1920. No objection was made to the filing within the prescribed three-day period, and we are of the opinion that the action of the secretary of state therefore became final. The law favors the diligent, especially in such matters as concern political rights. Needless confusion and uncertainty would probably result if the legality of nominations was permitted to be questioned when the time for the necessary steps in the preparation of the ballot and its distribution to the polls would be inadequate. The provision limiting the time for objections is reasonable and a proper exercise of legislative power.

The writ is therefore denied.

WRIT DENIED.

MORRISSEY, C. J., took no part in this decision.

FLANSBURG, J., not sitting.